IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES M. MURKERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:04-cv-754-B |
| | ) | [WO] |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Charles M. Murkerson ("Murkerson") appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his claim for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Considered examination of the record, briefs, and relevant law inform the court's conclusion that the Commissioner's decision should be reversed and remanded for further administrative consideration.

**I. PROCEDURAL HISTORY**

Murkerson applied unsuccessfully for disability benefits[1] prior to filing the pending application on June 7, 2000. Following administrative denial of his application for benefits, he received a requested hearing, proceeding *pro se*, before an administrative law judge ("ALJ") on November 5, 2001.

Age 63 at the time of the hearing, Murkerson testified that he has a high school education

---

[1]While the record does not indicate the filing date for this prior application, it was denied initially in September 1997 (R. 61) and was not further pursued. While the ALJ referenced this prior application in the written decision, he did not indicate whether he deemed it appropriate to reopen this prior application.

with prior work experience as a row crop farmer and as a supervisor with a pallet company. Alleging January 1, 1997 as the onset date of disability due to dizziness, Murkerson testified that he is unable "to do the things that he did before [the July 1995] accident" on-the-job at the pallet company. Murkerson has not since engaged in substantial gainful work.

The ALJ determined that Murkerson suffers a single severe impairment – *paroxysmal vertigo* – which "is not of listing-level severity." Allegations by Murkerson regarding his ability to work were deemed "not credible." Finding that Murkerson has the residual functional capacity ("RFC") to perform "medium work - indoors", including past relevant work as a supervisor at the pallet company, the ALJ found him not disabled within the meaning of the Social Security Act.[2]

Represented by counsel, Murkerson requested review of the adverse decision, and when the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636 (c).

## II.  STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). The Commissioner's decision must be considered conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), *citing Graham v. Apfel*, 129 F. 3d 1420, 1422

---

[2] R. 16, 21-23. The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920 and summarized in *Davis v. Shalala*, 985 F. 2d 528, 532 (11th Cir. 1993).

(11th Cir. 1997).

Substantial evidence is less than a preponderance; instead, it is considered such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). Because substantial evidence is "more than a scintilla," *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987), it "must do more than merely create a suspicion of the existence of the fact to be established." *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). A decision is not based on substantial evidence if it focuses on one aspect of the evidence while disregarding the contrary evidence. *McCruter v. Bowen*, 791 F. 2d 1544, 1548 (11th Cir. 1986).

The court must examine the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Commissioner's decision will be reversed if it reflects the application of incorrect law or insufficient reasoning to make the determination. *Keeton v. Department of Health & Human Servs.*, 21 F. 3d 1064, 1066 (11th Cir. 1994).

### III.  ISSUES

Murkerson specifies five issues for judicial review: *(1)* whether the ALJ failed to apply proper legal standards in his evaluation of the medical source opinion from a treating physician, Dr. Feagin, which stated that Mr. Murkerson could not return to his past work; *(2)* whether the ALJ failed to properly evaluate Mr. Murkerson's residual functional capacity; *(3)* whether the ALJ erred as a matter of law by failing to address Mr. Murkerson's emphysema or obesity as a severe or non-severe impairment at step two; *(4)* whether the ALJ failed to properly question the vocational expert; and *(5)* whether at step five of the sequential evaluation process, the ALJ failed to consider Mr.

Murkerson's treatment in regard to his ability to work on a regular and continuing basis.[3]

The court's analysis isolates three issues which warrant discussion:

1. whether the ALJ erred by not evaluating Murkerson's diagnosed emphysema and obesity as a severe impairment;

2. whether the ALJ's determination that Murkerson retained the residual functional capacity to perform his past relevant work ignored his treating physician's opinion; and

3. whether the ALJ's determination that Murkerson retained the residual functional capacity to do medium work is supported by substantial evidence.[4]

---

[3] Plaintiff's Brief at 1-2 ("*Pl.'s Br.*") (Doc. 11, filed Dec. 29, 2004).

[4] Finding error in the ALJ's step-four assessment of RFC dictates no discussion of claimed step-five error in not considering the impact of Murkerson's need for medical treatment. To the extent that this error underscores the ALJ's duty at steps four and five to establish RFC by reference to all pertinent medical evidence, including medical treatment, the court does not find sufficient support in the evidentiary record for the alleged error. *See e.g., French v. Massanari*, 152 F. Supp. 2d 1329, 1337-38(M.D. Fla. 2001)(finding ALJ did not have a duty to develop record on whether side effects of claimant's medication contributed to his disability where only evidence in record is claimant's testimony that his pain medication makes him "groggy"); *cf. Epps v. Harris*, 624 F. 2d 1267, 1272-73 (5th Cir. 1980)(remand warranted because incumbent upon ALJ to ascertain whether claimant's prescribed treatment precluded gainful work activity on a regular and continuing basis where his medical records substantiated the necessary treatment regimen as at-home traction treatment for two to three times per day for ten to twenty minutes).

Moreover, because the ALJ made a step-four finding of no disability – concluding that Murkerson retained the RFC to perform his past relevant work – the court declines to discuss alleged error in the ALJ's failure to ask the vocational expert whether his opinion was consistent with the Dictionary of Occupational Titles; the step four assessment requires no vocational expert testimony. *See Lucas v. Sullivan*, 918 F. 2d 1567, 1573 n.2 (11th Cir. 1990). To the extent that this claimed error highlights the ALJ's prerogative at step four to obtain vocational expert evidence concerning the physical and mental demands of Murkerson's past relevant work, *see* 20 C.F.R. §404.1560(b)(2), the court does not find – nor does Murkerson pinpoint– sufficient evidentiary support for a remand on this basis.

The first issue attacks the ALJ's step two analysis while the remaining two issues challenge the ALJ's assessment at step four of the five-step sequential evaluation process.

## IV.   DISCUSSION

### A.   Evaluation of Emphysema and Obesity

Murkerson contends that the ALJ erred as a matter of law by failing even to address the severity of his emphysema or obesity even though Murkerson provided "pertinent medical findings of both impairments"– a September 29, 1995 chest x-ray revealing extensive emphysematous changes in the upper lobes *and* medical expert testimony indicating a January 2000 diagnosis of obesity by his family practitioner, Dr. Charles Paulk.[5]  The Commissioner first responds that Murkerson bears the burden of showing that his impairment or combination of impairments is severe.

While "a diagnosis alone is an insufficient basis for a finding that an impairment is severe,"[6] the Commissioner misapprehends the thrust of Murkerson's contention:

> The issue in this case is **not** whether [his] emphysema and obesity are actually severe. The ALJ has a duty to "consider **every** impairment," severe and non-severe. . . While the ALJ does have the authority to discredit a diagnosis or treating physician's opinion or find that impairment is not severe, he has a duty to articulate his reasons for that finding.[7]

Murkerson describes correctly the ALJ's duty to discuss the severity of all impairments evidenced

---

[5] R. 104; R. 164.

[6] Memorandum in Support of the Commissioner's Decision at 8 (*Def.'s Br.*")(Doc. 14, filed Feb. 28, 2005).

[7] Plaintiff's Reply Brief at 9 (*Pl.'s Reply Br.*) (Doc. 18, filed March 22, 2005)(emphasis in original).

on the record and "to make clear the weight accorded to" the various medical evidence[8]; thus, the court now examines the evidentiary record to assess the ALJ's satisfaction of his obligation.

The ALJ's chronology of Murkerson's medical history duly notes Murkerson's reported height and weight during consultative examinations in September 1997 and in November 2000.[9] Absent is any reference to the 1995 chest x-ray revealing emphysematous of the upper lobes. The ALJ's step-two analysis of Murkerson's impairments addressed only his skull fracture, probable arthritis of the left hip and paroxysmal vertigo.[10]

The Commissioner acknowledges Murkerson's obesity but contends "the record is silent as to any limitations reasonably attributable to Plaintiff's obesity."[11] The court's review of the record discloses clear evidence to the contrary. Despite Murkerson's failure to allege obesity as a disabling

---

[8]*See Cowart v. Schweiker*, 662 F. 2d 731, 735 (11th Cir. 1981) ("What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."); *see also Bowen v. Heckler,* 748 F. 2d 629, 635 (11th Cir. 1984) ("It is the duty of the [ALJ] to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.").

[9]R. 17-18.

[10]In relevant part, the ALJ stated:

> A review of the documentary evidence establishes that the claimant's history is remarkable for several health and medical problems. Primarily, these include skull fracture (July 1995) secondary to being hit by a co-worker with hit by a pair of pliers, probable arthritis of the left hip, and paroxysmal vertigo (Exhibits 5F, 6F, 10F, 11F).

(R. 16). "On consideration of the record", the ALJ "[found] the claimant has the following 'severe' impairment: paroxysmal vertigo." (R. 21).

[11]*Def.'s Br.* at 8-9.

impairment, he testified about his height and weight. The ALJ's duty to assess functional limitations posed by his weight arises from confirmation by the medical expert, Dr. J. Anderson, of the obesity diagnosis made by Murkeson's family physician, Dr. Paulk – a diagnosis not otherwise rejected by the ALJ – as well as Dr. Anderson's hearing testimony that Murkerson "would be confined, significantly, because of his vertigo and obesity..."[12]

Murkerson's obesity required the ALJ to discuss whether it qualifies as a severe impairment – i.e., one that has had more than a minimal impact on the ability to perform basic work activities– to the same extent as he discussed the severity of other documented impairments. This he did not do. Remand is necessary for the ALJ to analyze and to state explicitly his analytical findings with respect to the severity of Murkerson's obesity– considered separately, and in combination with his other severe and non-severe impairments.[13]

With regard to the ALJ's failure to consider the severity of Murkerson's emphysema, the Commissioner argues that because the July 1995 chest x-ray documenting emphysematous precedes by two years the alleged onset of disability, it is beyond the relevant period. Murkerson responds *first* that "because this disease has no cure and is progressive, it would continue to be an issue." Murkerson next contends that "the ALJ made a *de facto* reopening" of the prior application because

---

[12]R. 156; R. 164.

[13]*See Gibson v. Heckler*, 779 F. 2d 619, 622 (11th Cir. 1986)(ALJ committed reversible error by failing to consider each impairment alleged and to state the weight accorded each item of impairment evidence and the reasons for his decisions on such evidence); *Ashford v. Barnhart,* 347 F. Supp. 2d 1189, 1193-94 (M.D. Ala. 2004)(ALJ committed reversible error in his failure to accept that she was diagnosed with bipolar disorder, to address the severity of the disorder, or to explain how and why the weight of the evidence would not support a finding that the disorder was a severe impairment).

his "decision was based on a review of a record in the prior applications."[14]

Whether or not the ALJ made a "*de facto* reopening", the record indicates his review of medical documents prior to Murkeson's onset date, likely in deference to Murkerson's contention that his dizziness and intolerance for sun, heat, or the outdoors – all resulting from the head trauma sustained in July 1995 – disabled him from performing work in the same manner. Assuming *arguendo* that this x-ray report falls within the relevant time period, the Commissioner contends correctly that "there is no treatment for emphysema after the alleged onset date"; no testimony by Murkerson about any work limitations imposed by this impairment; and no assessment by Dr. Anderson that this impairment has merit.[15]   Consequently, the record did not trigger the ALJ's duty to discuss the severity of emphysema – and his omission is not reversible error – because Murkerson did not carry her burden to put him on notice of its functional limitations.[16]

---

[14]*Pl's Reply Br.* at 12.

[15]*Def.'s Br.* at 9.

[16]*See* 20 C.F.R. §404.1512(a)("In general, you have to prove to us that you are ... disabled. Therefore, you must bring to our attention everything that shows that you are... disabled."); *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1336 (M.D. Ala. 2001)(substantial evidence supports ALJ's finding of no disability despite ALJ's failure "to discuss [claimant's] complaints of chronic back pain, [where] there is scant medical evidence to support the complaint...[and the claimant] did not indicate at the hearing that his claims of disability were premised on back pain or that he had functional limitations therefrom."); *Street v. Barnhart*, No. 04-15077, 2005 U.S. App. LEXIS 8938, **15-**18 (11th Cir. May 18, 2005)(finding no error in ALJ's failure to discuss severity of diagnosed mental impairment where claimant, represented by counsel, failed to list any mental impairment in his application for benefits, nor did he testify at the hearing that he suffered from any mental impairments that would prevent him from working)

8

### B. RFC Assessment for Past Relevant Work

Finding Murkerson not disabled at step four,[17] the ALJ determined that Murkerson can perform his past relevant work as a *supervisor- pallet company* – classified by the vocational expert as a "light-skilled job"– because he retains the RFC "to perform the exertional demands of medium work that is indoors."[18]

---

[17] Succinctly summarized by the Eleventh Circuit, at step four:

> the ALJ must assess (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work....If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

*Phillips v. Barnhart*, 357 F. 3d 1232, 1238 (11th Cir. 2004)(*internal citations omitted*).

[18] For this assessment, the ALJ relied principally on these unchallenged findings:

Moreover, despite the alleged disability, there is little evidence of corroboration, medical or otherwise. For example, at the hearing, the claimant testified to being able to perform essentially the demands of medium work. Dr. Feagin indicated that he could perform at least light work as long as it was indoor, and Dr. Prince indicated that he could perform work, with the exception of heavy work, in an indoor environment. This is supported by the opinions of Drs. Watson and Cotter.

On consideration of the record, I find that the claimant retains the residual functional capacity to perform the exertional demands of medium work that is indoors.

The vocational expert testified that the claimant had worked as a: Farmer (skilled, medium); and Supervisor-Pallet Company (skilled, light).

The vocational expert was queried as to whether the above-described residual functional capacity would preclude the performance of an of the identified jobs. The vocational expert testified that the residual functional capacity would not preclude the performance of work as a Supervisor-Pallet Company.

Upon consideration of the record, including the vocational expert's testimony, I find that the claimant retains the residual functional capacity to perform his past relevant

(continued...)

### *1. Medical Opinions:   RFC for Past Relevant Work*

Murkerson argues initially that the ALJ erroneously ignored the opinions of his treating physician, Dr. Charles A. Feagin, that he "may return to light duty office type work" but "[b]ecause of his dizziness...he can [not] do his regular type work" or  "any strenuous type work." The Commissioner maintains that the ALJ "properly gave controlling weight to the opinion of [Dr. Feagin]" and also considered properly the opinion of Dr. Watson, a neurologist, that no neurological restrictions precluded Murkerson  from sitting, standing, walking, lifting and carrying.[19]Murkerson concedes that the ALJ did  not ignore entirely Dr. Feagin's opinions  but argues  that his disregard for this doctor's clearly corroborative opinion of his inability "to do his regular work" means that the ALJ's step-four assessment is not bolstered by substantial evidence.[20]

It is indisputable that the ALJ's determination of Murkerson's RFC for his previous work neither did not incorporate, attempt to discredit, or otherwise reconcile, Dr. Feagin's expressed opinion limiting his return to that work.  Nor did the ALJ attempt to elicit testimony from Murkerson

---

[18](...continued)
work.

(R. 22-23).

[19]*Pl's Br.* at 6-7, citing R. 115-116;  *Def.'s Br.* at 4-5.

[20]*Pl.'s Reply Br.* at 2.  Because the record does not establish the commencement date in 1995 for Murkeson's supervisory position, he suggests "further development" to ascertain if he performed the post "long enough to acquire transferable skills or be considered relevant work." *Pl.'s Reply Br.* at 7;  *Pl's Br.* at n. 2;  *see* 20 C.F.R. §404.1565(a) *and* SSR 82-62.  Any deficiency in this regard is insufficient to warrant remand because the record provides no  basis for a finding  that Murkerson did not learn the supervisory techniques, acquire information , or develop the facility necessary for average performance.

pertinent to the limitations specified by this treating doctor.  These omissions constitute error.[21]

## 2. Medical Opinions:  RFC for medium work

Murkerson seeks remand  arising from the ALJ's assessment of his RFC for medium work, alleging that (a) "the record is void of any physical capacities evaluation, performed by a treating, examining, or non-examining physician"; (b) the ALJ's RFC assessment "directly conflict[s] with the treating and examining physicians" and (c) "the ALJ misquoted evidence in order to find that [he] retained the ability to perform medium work."[22]

Assessment of RFC falls squarely within the ALJ's province, but it must be based upon all relevant evidence of the claimant's ability to work despite impairments.  *Lewis v. Callahan*, 125 F. 3d 1436, 1440 (11th Cir. 1997); SSR 96-5p, 1996 SSR LEXIS 2, *5-*7 ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.").[23]

---

[21] *SSR 96-5p* ("Nevertheless, our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues reserved to the Commissioner [– i.e. whether an individual's RFC prevents him from doing past relevant work]...[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance...However, opinions from any medical source on issues reserved to the Commissioner must never be ignored.  The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision or disability, including opinions from medical sources about issues reserved to the Commissioner.").

[22] *Pl.'s Br.* at 8-9.

[23] Consequently, this court finds unsupported Murkerson's claimed error arising from the absence of any physical capacities evaluation since assessment of RFC is an explicit issue reserved to the ALJ.  Thus, the court proceeds to analyze whether the ALJ's RFC assessment is supported by substantial evidence and proper application of the law.

The ALJ's analysis of Murkerson's ability to perform the exertional demands of medium work[24] focused, as follows, on Murkerson's hearing testimony and medical source opinions:

> [A]t the hearing, the claimant testified to being able to perform essentially the demands of medium work. Dr. Feagin indicated that he could perform at least light work as long as it was indoor, and Dr. Prince indicated that he could perform work, with the exception of heavy work, in an indoor environment. This is supported by the opinions of Drs. Watson and Cotter.[25]

The court finds inappropriate not the ALJ's evidentiary focus – s*ee* 20 C.F.R. §404.1545; *see also* SSR 96-8p – but rather his utter failure to report the record evidence regarding Murkerson's ability to perform the exertional demands of medium work. Murkerson's relevant testimony and medical source opinions serve to fuel the asserted contention that "the ALJ misquoted evidence in order to find that [he] retained the ability to perform medium work."[26] Murkerson did *no*t testify that he can perform the standing or walking requirements of medium work.[27] After Murkerson testified regarding his daily activities, the vocational expert opined that his testimony, if deemed "fully credible ...more closely approximates sedentary work activity" which, given his age, would preclude all

---

[24]Medium work involves lifting no more than 50 pounds at a time with frequent lifting and carrying of objects weighing up to 25 pounds. *See* 20 C.F.R. §404.1567. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. *See* SSR 83-10.

[25]R. 22.

[26]*Pl.'s Br.* at 9-10.

[27]Murkerson testified that he could lift and carry "25 to 50 pounds", depending "on how far [he] had to carry it" but he "honestly [didn't] know [if he] could lift 50 pounds. [He] haven't [sic] done it lately, but [he] could at one time"; he can sit "a couple hours at one time"; and stand an hour at one time. He also testified that his past job as a supervisor required him to walk "around during the day", but he cannot do that now; instead, he can walk one hour without resting. (R. 156-57, 165).

12

work.[28]

Notwithstanding Dr. Feagin's opinion that Murkerson could perform "light duty office type work", the ALJ should not assume that Dr. Feagin used the term "light" as it is defined under the regulations,[29] a distinction that both parties embrace.[30] To the extent of the ALJ's reliance on Dr. Prince's opinion that Murkerson could not perform heavy work but could perform work activity indoors, the record provides no basis for construing this opinion as indicative of Murkeson's ability to satisfy the exertional demands of medium work.[31] While Dr. Watson opined that no neurological impairments restricted Murkerson's ability to lift, carry, sit, stand or walk – an opinion duly noted

---

[28]R. 162; R. 169.

[29]*See* SSR 96-5p, 1996 SSR LEXIS 2, *13-*14 ("From time to time, medical sources may provide opinions that an individual is limited to 'sedentary work,' 'sedentary activity,' 'light work,' or similar statements that appear to use the terms set out in our regulations and Rulings to describe exertional levels of maximum sustained work capability. Adjudicators must not assume that a medical source using terms such as 'sedentary' and 'light' is aware of our definitions of these terms. The judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do and is a finding that may be dispositive of the issue of disability.").

[30]*See Def.'s Br.* at 6 ("nothing in the record supports Plaintiff's implicit argument that Dr. Feagin used the term 'light' in the same way the Commissioner defines that term in her regulations"); *and Pl's Reply Br.* at 3, 6 ("Mr. Murkerson has never contended that Dr. Feagin's definition of 'light duty work' holds the same definition as the Commissioner's term 'light work'... [instead, he was] using the term 'light duty' to restrict his work activities as demonstrated by [his] refusal to release Mr. Murkerson to full duty work as a pallet supervisor.").

[31]The ALJ apparent reference is to the July 1, 1996 Neurological Consultation report which indicated that Murkerson "would be unable to work on the outside as a laborer in the hot temperatures" but "can work indoors" and that "it is probable that retraining for this type of job would be very successful." (R. 110).

by the ALJ and highlighted by the Commissioner,[32] glaringly absent in the ALJ's decision is any reference to the medical expert's testimony: "According to the records, [Murkerson] would be confined, significantly, because of his vertigo and obesity, and would be limited to light work activities."[33] The ALJ did not reference, discredit or otherwise reconcile Dr. Anderson's opinion. This is error.[34] Accordingly, the court concludes that the ALJ's assessment of Murkerson's RFC for medium work fails to provide a sufficient explanation of his consideration of all medical source statements and his reconciliation of any ambiguities or inconsistencies.

## V. CONCLUSION

Based on the evidentiary findings and conclusions explaining errors by the ALJ at steps two and four of the sequential evaluation process, the court concludes that his decision is not supported by substantial evidence. It is, therefore, **ORDERED** that the decision of the Commissioner is REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for further

---

[32] R. 18; *Def.'s Br.* at 7.

[33] R. 164.

[34] *See* SSR 96-8p ( "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion...The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved....The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); *SSR 96-5p* ("A medical source's statement about what an individual can still do is medical opinion evidence that an adjudicator must consider together with all of the other relevant evidence...when assessing an individual's RFC....Adjudicators must weigh medical source statements under the rules set out in 20 CFR 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions."); *see also Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-6 (11th Cir. 1991)( reversal mandated by Commissioner's failure to provide sufficient reasoning to assess propriety of the legal analysis); *Cook v. Barnhart*, 347 F. Supp. 2d 1125, 1132 (M.D. Ala. 2004)("The ALJ is required to explain his findings explicitly not just for the claimant's benefit. Clear and specific findings are also the *sin qua non* of effective review of this court.").

administrative proceedings to evaluate the severity of Plaintiff Murkerson's obesity and to  assess his residual functional capacity   for past work   A separate judgment will be entered.

Done this 16TH day of December, 2005.

**/s/ Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE
